UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DR. ANTOINE GAYLES,

           Plaintiff,

v.

HILLSIDE BOARD OF EDUCATION, *et al.*,

           Defendants.

Civil Action No. 20-13051 (JXN) (LDW)

**OPINION**

**NEALS,** District Judge:

Before this Court is Defendants'—Hillside Board of Education ("the Board"), Juan Allende ("Allende"), Laquana Best ("Best"), Joel Chapman ("Chapman"), Pinchas Shapiro ("Shapiro"), and Kim Cook ("Cook," and collectively, "Defendants")[1]—Motion to Dismiss Plaintiff Dr. Antoine Gayles' ("Plaintiff") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (ECF No. 22.) Plaintiff opposed the Motion (ECF No. 25) and Defendants replied (ECF No. 26). Having considered the parties' submissions, the Court decides this matter without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated herein, the Defendants' Motion is **GRANTED** in part and **DENIED** in part.

I. BACKGROUND

Plaintiff, the former Superintendent of Schools for the Hillside, New Jersey, brings this suit against Defendants alleging various constitutional violations in addition to claims of conspiracy and political retaliation. (Am. Compl. ¶ 17, ECF No. 17.) He asserts that during his tenure, he was

---

[1] Defendant Anthony Salters ("Salters") appears *pro se* and has joined in the other Defendants' Motion. (ECF No. 24.)

[2] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

1

subject to subterfuge and harassment motivated by personal and political agenda led by Salters—the former Hillside Democratic Committee Chairman—culminating in his ouster in early 2019. (*Id.* ¶¶ 2, 11, 17.)

Plaintiff was hired on July 1, 2016, on a four-year contract. (*Id.* ¶ 18.) On November 7, 2018—the day after the election in which Defendants Allende, Best, Chapman, Shapiro, and Cook won seats to the Board—Plaintiff negotiated an extension with the then-Board president to extend Plaintiff's term from June 30, 2020, to June 30, 2023. (*Id.* ¶¶ 48-49; Defs.' Moving Br. ¶ 23, ECF No 22-3.) In one of its last official actions, the lame duck Board voted to rescind Plaintiff's initial contract and approve the new contract—a unilateral act by the outgoing president taken without notice and approval from the entire Board. (Am. Compl. ¶ 55; Am. Compl., Ex. B, ALJ Decision 12, ECF No. 17-2.)

On January 3, 2019, its first day of office, the new Board passed a motion to issue Plaintiff a *Rice* notice[3]—a notification to the public of the Board's intent to discuss Plaintiff's employment. (Am. Compl. ¶ 57a.) The Rice notice was issued to Plaintiff on January 23, 2019. (*Id.* ¶ 57c.) The next day, without listing the matter of Plaintiff's employment on the public agenda, the Board passed another motion to suspend Plaintiff with pay to inquire as to the legality of the new contract. (*Id.* ¶ 57d-e.)

On February 28, 2019, Plaintiff filed an Order to Show Cause with the Office of Administrative Law ("OAL") requesting reinstatement, which was denied. (*Id.* ¶ 57h.) After filing Exceptions to this decision with the Commissioner of Education, the matter was remanded to the

---

[3] *Rice* notice refers to the right of a public employee to receive notice of the intention of the board of education to consider personnel matters related to them. Rice v. Union Cnty. Reg'l High Sch. Bd. of Educ., 155 N.J. Super. 64, 74 (App. Div. 1977), *certif. denied*, *denied*, 76 N.J. 238 (1978).

OAL. (*Id.*) Separately, the Board filed a Petition for Declaratory Decision with the OAL to deem the new contract invalid. (*Id.* ¶ 57i.)

On May 1, 2019, the Board passed a Resolution declaring the new contract null and void and retroactively rescinding Plaintiff's initial contract, effectively terminating him. (*Id.* ¶ 57k.) The Board sought reimbursement for payment made after the retroactive date of November 30, 2018. (*Id.*) In response, Plaintiff filed another Order to Show Cause with the OAL. (*Id.* ¶ 57l.) The Administrative Law Judge ("ALJ") then issued an order compelling the Board to reinstate Plaintiff's salary and benefits under the terms of the initial contract until an initial decision was made as to the full proceeding. (*Id.*)

On June 17, 2020, the ALJ issued his initial decision. (*See generally* Am. Compl., Ex. B, ALJ Decision.) The ALJ held that both the new contract and the later recission of the initial contract were void. (Am. Compl., Ex. B, ALJ Decision 24-25.) Specifically, the ALJ concluded that while "the circumstances surrounding the suspension were suspect, the same conclusion applies to the circumstances surrounding the preparation of a new contract sent without full Board authority." (*Id.* 25.) The ALJ's decision was affirmed by the Commissioner of Education on August 3, 2020, which Plaintiff did not appeal. (Defs.' Moving Br. ¶ 43.)

Plaintiff filed his original Complaint on September 22, 2020. (*See generally* Compl., ECF No. 1.) In response, Defendants moved to dismiss (ECF No. 8), prompting Plaintiff to withdraw his Complaint and file a six-count Amended Complaint. Plaintiff asserts the following counts: (I) "[42 U.S.C. §] 1983 violation – 1st Amendment; (II) "[42 U.S.C. §] 1983 – 14th Amendment – 'Procedural Due Process'"; (III) "Conspiracy" in violation of "42 U.S.C. 1983 and the First, Fourth, Fifth and Fourteenth Amendments"; (IV) "Individual Liability" in violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments; (V) "Tortious Interference with Contractual

Relations"; and (VI) "Tortious Interference with Economic Gain." (ECF No. 17.) Defendants filed the instant Motion in response. (ECF No. 22.)

Among the allegations in the Amended Complaint, Plaintiff cites the following as instances of harassment, conspiracy, and retaliation:

- In or around August 2016, Salters told Plaintiff to come to him if he wanted to discipline someone because "he could say things to people that maybe, legally [P]laintiff could not." (Am. Compl. ¶ 21.) Salters also requested weekly meeting with Plaintiff and that Plaintiff hire Hillside residents. (*Id.*) Plaintiff declined the weekly meetings and responded that he would hire the best candidates. (*Id.* ¶ 22.)

- In November 2016, Plaintiff became aware of a petition organized by Salters to replace Plaintiff. (*Id.* ¶ 24.)

- In December 2016, Salters announced a procurement of $1 million in county funding to renovate the district's athletic field. (*Id.* ¶ 27.)

- In January 2017, after speaking with several county administrators, Plaintiff reported at a Board meeting that "there was no funding . . . but rather the Township owed the County money which it refused to repay." (*Id.* ¶ 29.) This apparently "enraged" and "embarrassed" Salters, who "demanded a public apology." (*Id.*)

- In May 2017, Plaintiff met with then-Board President Daliah Vertreese and Board member George Cook.[4] (*Id.* ¶ 33.) At the meeting, Vertreese "stated that the Board met and had enough votes to buy out [P]laintiff's contract if [he] could not get along with [Salters]." (*Id.*)

- On October 9, 2017, Plaintiff met with Salters "to resolve lingering issues." (*Id.* ¶ 35.) Salters tried to persuade Plaintiff to rework the athletic field deal. (*Id.* ¶ 36.) Plaintiff did not recommend the deal to the Board at the October meeting. (*Id.* ¶ 40.)

- In February 2018, Salters had the following text message exchange with a Board member who is not a named defendant:

    > **Board member**: "It looks as if my role is to go with everyone else and fall in line. I was told it would be political suicide if I vote the way I want. I don't have political aspirations. I just want to do right by the

---

[4] Neither are named defendants in this case. Defendants assert there is no relation between George Cook and Defendant Kim Cook. (Defs.' Moving Br. ¶ 6 n. 1.) Plaintiff maintains George and Kim are siblings. (Pl. Opp'n Br. 26, ECF No. 25.)

> students. This hurts so much because I want our kids to succeed. I don't care about being the mayor. I don't care about advancing my political agenda because I don't have one. My heart hurts so much."
>
> **Salters**: "We all do. We just have a supt. [sic] who is a great bs artist who needs to go. We have a community that is hurting economically. They have 1 request of us. [Another Board member] and I have our differences but I love her passion. She is starting to see what I have been saying about [Plaintiff]." (*Id.* ¶ 41.)

- Sometime between 2017 and 2018, Defendants Chapman, Cook, Shapiro, Allende, and Best ran for Board seats on the Democratic ticket. (*Id.*) Plaintiff alleges that they received "financial support and endorsement" from Salters and that "a condition of winning a seat on the Board was their fealty to Salters and oust [Plaintiff] due to his refusal to concede to political pressure as he was not politically aligned." (*Id.*)

- As part of their election campaign, the Defendants running for Board seats appeared in newsletter picture alongside "disparaging comments about [P]laintiff's professional background and performance as Superintendent, with a caption saying money is not the problem leadership is the problem." (*Id.*)

## II. LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.*

While this standard places a considerable burden on the defendant seeking dismissal, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Put differently, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662

(2009). In order to determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must assume the veracity of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

**III. DISCUSSION**

Defendants advance two primary arguments in support of their Motion. Preliminarily, Defendants argue that Plaintiff is precluded by collateral estoppel to relitigate any due process claims. (Defs.' Moving Br. 20-23.) Next, Defendants contend Plaintiff has failed to plead facts sufficient to support his claims of (1) First Amendment discrimination based on political affiliation, (*id.* 16-20); (2) civil conspiracy, (*id.* 23-27); (3) individual or municipal liability, (*id.* 27-34); and (4) tortious interference with contractual relations or economic gain, (*id.* 34-37). The Court addresses each argument in turn.

**A. Collateral Estoppel**

In Count II of his Amended Complaint, Plaintiff claims violations of 42 U.S.C. 1983 and Fourteenth Amendment procedural due process because he "was not given proper notice or hearing before being deprived of his significant property interest in his tenure, position and career." (Am. Compl. ¶ 78.) Defendants counter, and this Court agrees, that all procedural due process concerns were already adjudicated by the ALJ in his June 2020 decision. (Defs.' Moving Br. 20.)

The doctrine of collateral estoppel, or issue preclusion, prevents the relitigation of a particular issue already adjudicated in a prior proceeding if: (1) the issue sought to be precluded is the identical to that from the prior proceeding; (2) the issue was actually litigated; (3) the issue

was determined by final judgment on the merits; and (4) the determination was essential to the prior judgment. *Pasqua v. County of Hunterdon*, No. 15-3501, 2017 WL 5667999, at *14 (D.N.J. Nov. 27, 2017) (quoting *Peloro v. United States*, 488 F.3d 163, 174-75 (3d Cir. 2007). Here, the parties focus their dispute on the first prong of the collateral estoppel analysis.

Plaintiff submits that the ALJ "ruled on the contractual issues solely and made no rulings regarding Sections 1983 or [P]laintiff's constitutional rights being violated" and that the prior ruling "is clearly outside the scope of the [ALJ's] decision as it contains different facts, standards and damages." (Pl. Opp'n Br. 27-28, ECF No. 25.) However, the Court finds that the issues now presented by Plaintiff's federal claims are identical to those state claims asserted with the OAL and resolved by the ALJ's decision.

In his decision, later affirmed by the Commissioner of Education, the ALJ found that the Resolution suspending Plaintiff in January 2019, followed by the Resolution to stop his salary in May 2019—wherein he was ordered to remove his belongings and was barred from his office— effectively "amounted to a termination, disguised as a suspension, without the right to be properly heard under the involuntary-termination section[s] of N.J.S.A. 18A:17-20 and N.J.A.C. 6A:23A-3.2, which involves notice of charges and evidence to a superintendent, with a right to reply." (Am. Compl., Ex. B, ALJ Decision 24.)

Likewise, here, Plaintiff advances claims requiring the Court to make the same inquiry under the same factual basis—specifically, whether Plaintiff was improperly denied notice and a hearing. *See Montana v. United States*, 440 U.S. 147, 155-62 (1979) (applying collateral estoppel where the issue sought to be litigated was identical to the issue already litigated in a prior proceeding and there was no change in controlling facts). The Court thus holds that the defense of

7

collateral estoppel is appropriate and Defendants' Motion as to Plaintiff's procedural due process claim is granted.

Accordingly, Count Two of the Amended Complaint is dismissed with prejudice.

### B. Political Patronage Retaliation

The Court next considers Defendants' argument that Plaintiff fails to state a claim under Section 1983 for retaliation for political affiliation (or non-affiliation) and speech in violation of the First Amendment. (Defs.' Moving Br. 1617-20.) To state a *prima facie* case, Plaintiff must show: (1) employment at a public agency in a position that does not require political affiliation, (2) engagement in constitutionally protected conduct, and (3) that this conduct was a substantial or motivating factor in the public agency's employment decision. *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). As Defendants do not dispute the first two elements (*see* Defs.' Moving Br. 18), the Court centers its inquiry on the third prong.

The Third Circuit has elaborated that there is an implicit requirement in the third prong that the plaintiff "produce sufficient evidence to show the defendant knew of plaintiff's political persuasion." *Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 664 (3d Cir. 2002). Sufficient evidence "requires proof of both knowledge and causation." *Galli*, 490 F.3d at 275. On this point, Defendants argue that Plaintiff has failed to provide sufficient factual support to demonstrate that they "were even aware of Plaintiff's own political proclivities," or that Plaintiff's failure to align with Salters or with a particular party was a "substantial or motivating factor" in the Board's employment decisions. (Defs.' Moving Br. 19.) The Court disagrees in part.

Viewing the facts in a light most favorable to Plaintiff, the Court draws a reasonable inference that the Board was both aware of his political non-affiliation and that it was a motivating factor in his suspensions. Plaintiff has provided ample evidence of his failure to align with Salters,

the former Hillside Democratic Committee Chairman. (*See* Am. Compl. ¶¶ 21-22, 27-32.) Further, the May 2017 meeting with two non-defendant Board members—during which the then-Board president purportedly told Plaintiff that the Board met and had enough votes to buy out his contract if he could not get along with Salters—suggests that the Board was not only aware of Plaintiff's discord with Salters, but also that failure to resolve the discord would be the motivating factor in his removal. (Am. Compl. ¶ 333.) As to the individually named defendants on the Board, however, the Amended Complaint provides no evidence indicating a possible First Amendment violation other than the conclusory allegation that "[a] condition of winning a seat on the Board was their fealty to Salters and oust [Plaintiff] due to his refusal to concede to political pressure as he was not politically aligned." (*Id.* ¶ 41.)

Accordingly, Defendants' Motion is granted as to the individually named defendants and denied as to the Board itself. Count One is dismissed as to the individually named defendants without prejudice.

### C. Civil Conspiracy

To state a claim for civil conspiracy, Plaintiff must show: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus*, 331 F.3d 406, 414 (3d Cir. 2003).

To survive a Rule 12(b)(6) motion to dismiss, allegations of a conspiracy must provide "some factual basis to support the existence of the elements of a conspiracy: agreement and

concerted action." *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009). Here, Plaintiff has not presented facts sufficient to show the existence of an agreement between Defendants.

In support, Plaintiff relies on the broad and unsubstantiated claim that the individually named defendants ousted him in exchange for electoral support. (Pl. Opp'n Br. 30.) Yet "[t]he factual allegations supporting the conspiracy claim may not be generalized or conclusory." *Ivan v. County. of Middlesex*, 595 F. Supp. 2d 425, 484 (D.N.J. 2009). Likewise, "mere conclusory allegations that a conspiracy exists will not survive a motion to dismiss." *Sherrill v. City of Hoboken*, No. 16-3092, 2020 WL 64617, at *10 (D.N.J. Jan. 6, 2020). Plaintiff has presented no further evidence in support of this claim.

Plaintiff's insistence that Chapman's recruitment of a new Board attorney to issue Plaintiff a *Rice* notice "clearly speaks to . . . a meeting of the minds between [the attorney], Chapman, Shapiro, Best, Cook, and Allende" is also unconvincing. (Am. Compl. ¶ 57a.) Plaintiff has not alleged other facts from which the Court can infer a connection between this act and a greater agreement between the individually named defendants.

As for the Board itself, the May 2017 meeting in which the then-Board president told Plaintiff that the Board had met and had enough votes to buy out Plaintiff's contract suggests an agreement existed. (Am. Compl. ¶ 34.) However, officers of governmental entities cannot conspire with the entity itself to establish a civil conspiracy claim. *Sunkett v. Misci*, 183 F. Supp. 2d 691,

722 (D.N.J. 2002) (citing *Gregory v. Chehi*, 843 F.2d 111, 118 n. 4 (3d Cir. 1988)). Defendants' Motion is thusly granted as to Plaintiff's conspiracy claim.

Accordingly, Count Three is dismissed without prejudice.

### D. Individual Liability

In Count IV, Plaintiff asserts an individual liability claim wherein the individually named defendants were responsible for the "instruction, supervision, control and discipline of the members of the Board." (Am. Compl. ¶ 86.) From their acts and omissions, Plaintiff avers a deprivation of his rights, privileges, and immunities secured by the First and Fourteenth Amendments and Section 1983. (*Id.* ¶ 93.) Defendants' two-fold response posits insufficient factual support to maintain a claim against both the individually named defendants and the Board itself. (Defs.' Moving Br. 27-34.) The Court finds Plaintiff has failed to plead sufficient facts to support a claim against any defendant.

To state a claim for individual liability under Section 1983, Plaintiff must show that the individual defendants "personally participated in violating [his] rights, or that they directed others to violate, or that they had knowledge of and acquiesced in their subordinates' violations." *Ivan*, 595 F. Supp. 2d 425, 479-80 (D.N.J. 2009) (quoting *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). Again, other than the sweeping declaration that the individually named defendants "participated in and were informed of the unlawful and continued harassment," Plaintiff has established no facts demonstrating personal participation in or knowledge of the individually named defendants in a broader scheme to violate his rights. (Am. Compl. ¶ 86.) Plaintiff's claim of personal liability against Allende, Cook, Shapiro, and Best rests entirely on the fact that they were simply members of the Board who ran with Salters' endorsement. With respect

11

to Chapman, Plaintiff has not pled facts demonstrating how the recruitment of a new Board attorney personally violated his rights.

As for the Board itself, a school board can be liable under Section 1983 for a constitutional violation "if it occurred as a result of a policy or custom established or approved by that entity." *L.S. v. Mount Olive Bd. of Educ.*, 765 F. Supp. 2d 648, 658 (D.N.J. 2011) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978)).

A school board may also be liable "if they fail to supervise or train their employees or personnel, and such failure exhibits a 'deliberate indifference to the rights of persons' with which they come into contact." *Id.*, 765 F. Supp. 2d at 658-59 (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To show how a board's failure to train or supervise exhibits deliberate indifference to his rights, a plaintiff must "(1) identify a specific supervisory practice that the entity failed to employ; (2) establish contemporaneous knowledge of the offending incident or a prior pattern of similar incidents; and (3) show circumstances under which the supervisor's action or inaction could have been found to have communicated a message of approval." *Id.*, 765 F. Supp. 2d at 660.

Lastly, a plaintiff may allege specific acts or decisions by a policymaker on the school board that promulgated or was deliberately indifferent to a custom or policy that violated the plaintiff's constitutional rights. *Simmons v. City of Philadelphia*, 847 F.2d 1042, 1060-62 (3d Cir. 1991). Here, Plaintiff has not identified any Board custom or policy that contributed or was deliberately indifferent to his alleged constitutional violations. Nor has Plaintiff identified a particular policymaker decision that promulgated or was deliberately indifferent to his rights. Nor has he put forth any specific evidence illustrating how the Board's failure to train or supervise its employees exhibited a deliberate indifference to his rights. Plaintiff has only advanced the wholly

12

conclusory allegations that the Defendants "created, authorized, maintained, permitted, and enforced a policy, practice, custom or usage of failing to property instruct, supervise, control and discipline members of the Board" and that "Plaintiff's rights were clearly established at the time of such illicit actions and were violated by Defendants." (Am. Compl. ¶ 90.)

Accordingly, Count Four is dismissed without prejudice.

### E. Tortious Interference with Contractual Relations and Economic Gain

As a threshold matter, Defendants argue that Plaintiff's claims for tortious interference with contractual relations and economic gain should be dismissed for failing to comply with the New Jersey Tort Claims Act ("NJTCA"). (Defs.' Moving Br. 34-35.) The NJTCA establishes strict circumstances under which a plaintiff may bring a tort claim against public entities and public employees. *See* N.J.S.A. 59:1-1 *et seq.* Before filing a complaint, a plaintiff must submit a notice of claim to the public entity within ninety days of the claim's accrual. N.J.S.A. 59:8–8(a–b).

Notice is a necessary condition to filing a complaint against a public entity. *Doe v. Bd. of Educ. Of Vocational-Tech. Sch. Dist.*, No. 17-13793, 2019 WL 2183860, at *3, (D.N.J. May 21, 2019). Consequently, a plaintiff who fails to timely provide notice of a claim to a public entity or public employee within 90 days of accrual "shall be forever barred from recovering." N.J.S.A. 59:8–8. The notice provisions of the NJTCA apply to intentional tort claims against public employees, as here in Counts V and VI. *Evans v. Gloucester Tp.*, 124 F. Supp. 3d 340, 354 (D.N.J. 2015) (citing *Velez v. City of Jersey City*, 850 A.2d 1238, 1244-45 (N.J. 2004)).

Because the Amended Complaint provides no indication that Plaintiff satisfied the notice requirements under the NJTCA Plaintiff's tort claims against Defendants are barred by N.J.S.A. 59:8–8 and Counts Five and Count Six are and dismissed without prejudice.

### IV. CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss (ECF No. 22) is granted in part and denied in part. An appropriate form of Order accompanies this Opinion.

DATED: April 11, 2022

JULIEN XAVIER NEALS
UNITED STATES DISTRICT JUDGE